**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

In the Matter of the Application of WINDSHAPE, INC.,

Petitioner,

v.

JAY ALLAN SHEARS,

Respondent.

5:26-cv-259 (ECC)

Lawrence M. Ordway, Jr., Esq., *for Petitioner*
Jay Allan Shears, *Pro Se Respondent*

**Hon. Elizabeth C. Coombe, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

On February 18, 2026, Petitioner WindShape, Inc. (Petitioner) filed a petition seeking an order to compel Respondent, Jay Allan Shears, to submit his pending employment-related claims to arbitration under Section 4 of the Federal Arbitration Act (FAA), 9 U.S.C. § 4. *See* Petition, Dkt. No. 1. On February 25, 2026, Respondent filed a cross-motion for dismissal. *See* Dkt. No. 6. On March 19, 2026, Respondent filed a motion to quash or dismiss service of process and requested an extension for time to respond to the initial petition. *See* Dkt. No. 12. On March 21, 2026, Respondent filed a motion for leave to file a "limited declaration and three narrowly targeted exhibits." Dkt. No. 13. On August 6, 2026, Respondent filed a motion for leave to file a "limited source-identification notice." Dkt. No. 25. The motions are now fully briefed. *See* Dkt. Nos. 5, 11, 17, 19.

## II. BACKGROUND[1]

On April 18, 2022, Respondent began his employment with Petitioner as the Vice President of Business Development. Dkt. No. 1 ¶ 8. On July 19, 2022, Petitioner (vis-à-vis Director Nicolas Bosson) and Respondent executed an employment agreement, which has an effective date of April 18, 2022. *Id.* at ¶ 9; Dkt. No. 1-4 (the Agreement). The Agreement includes an arbitration provision at section 33:

> Any controversy, claim or dispute arising out of or relating to this Agreement or the employment relationship, either during the existence of the employment relationship or afterwards, between the parties hereto, their assignees, their affiliates, their attorneys, or agents, shall be settled by arbitration in Syracuse, New York. Such arbitration shall be conducted in accordance with the then prevailing commercial arbitration rules of the American Arbitration Association (but the arbitration shall be in front of an arbitrator, with the following exceptions if in conflict: (a) one arbitrator shall be chosen by Company's Board of Directors; (b) each party to the arbitration will pay its pro rata share of the expenses and fees of the arbitrator(s), together with other expenses of the arbitration incurred or approved by the arbitrator(s); and (c) arbitration may proceed in the absence of any party if written notice of the proceedings has been given to such party. The parties agree to abide by all decisions and awards rendered in such proceedings. Such decisions and awards rendered by the arbitrator shall be final and conclusive and may be entered in any court having jurisdiction thereof as a basis of judgment and of the issuance of execution for its collection. All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity; provided however, that nothing in this subsection shall be construed as precluding the Company from bringing an action for injunctive relief or other equitable relief or relief under the Confidential Information and Invention Assignment Agreement. The arbitrator shall not have the right to award punitive damages, consequential

[1] For motions to compel, "courts apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quoting *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). This standard "requires a court to consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Id.* (cleaned up). It is "appropriate" to use this standard in cases where a court is required "to determine arbitrability." *Id.* at 230 (internal quotation and citation omitted). Moreover, "in determining whether a dispute falls within an arbitral agreement's scope, [the courts in this Circuit] consider all relevant evidence and draw reasonable inferences in favor of the non-moving party." *See Matima v. ByteDance, Inc.*, No. 25 Civ. 10213, 2026 WL 2676497, at *1 (S.D.N.Y. Sept. 11, 2026) (citing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)).

> damages, lost profits or speculative damages to either party. The parties shall keep confidential the existence of the claim, controversy or disputes from third parties (other than the arbitrator), and the determination thereof, unless otherwise required by law or necessary for the business of the Company. The arbitrator(s) shall be required to follow applicable law.

*Id.* at 9–10[2] (item 33). The Agreement also includes a forum selection clause, on the last page and not numbered, stating:

> Any controversy, claim or dispute arising out of or relating to this Agreement or the employment relationship, either during the existence of the employment relationship or afterwards, between the parties hereto, their assignees, their affiliates, their attorneys, or agents, shall be litigated solely in state or federal court having jurisdiction over Onondaga County. Each party (1) submits to the jurisdiction of such court, (2) waives the defense of an inconvenient forum, (3) agrees that valid consent to service may be made by mailing or delivery of such service to the Secretary of State (the "Agent") or to the party at the party's last known address, if personal service delivery cannot be easily effected, and (4) authorizes and directs the Agent to accept such service in the event that personal service delivery cannot easily be effected.

*Id.* at 10. In addition, the Agreement includes a New York choice of law provision at section 31, stating that it "shall be governed by and construed in accordance with the laws of the State of New York, County of Onondaga without regard to conflict of law principles." *Id.* at 9. In short, the Agreement mandates arbitration for all disputes arising from Respondent's employment with Petitioner, and subject to this requirement, provides for exclusive jurisdiction in courts with jurisdiction over Onondaga County for any judicial proceedings between the parties. After signing the Agreement, Respondent worked for Petitioner, first in Syracuse, New York until April 2023, and then until December 4, 2024 in Tulsa, Oklahoma, when he was notified of the decision to terminate his employment (effective January 4, 2025). Dkt. No. 1 ¶ 15.

In June 2025, Respondent filed a lawsuit *pro se* against WindShape Inc. and WindShape

[2] Unless otherwise noted, citations to page numbers refer to pagination generated by the ECF system.

SA (the Oklahoma Defendants) in the United States District Court for the Northern District of Oklahoma (Case No. 4:25-cv-00306-CVE-JFJ) (the June 2025 Action). The June 2025 Action alleges claims under the Fair Labor Standards Act, the Oklahoma Wage Act, Title VII, and breach of contract (and alternatively, promissory estoppel/quantum meruit), and breach of the employment agreement. *See generally* Dkt. No. 1-6. On July 18, 2025, the Oklahoma Defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12 for lack of personal jurisdiction over WindShape SA, to compel Respondent to arbitrate under the FAA, and to dismiss or stay the action pending arbitration. *See* Dkt. No. 1 ¶ 19. On August 15, 2025, United States District Judge Claire V. Eagan issued an order denying defendants' request to compel arbitration of plaintiff's claims, finding that "a district court with authority to compel arbitration in Syracuse, New York, must decide any arguments regarding the arbitrability of plaintiff's claims." *See* Dkt. No. 1-8 at 3–5 (the 2025 Order). Judge Eagan stayed the June 2025 Action pending, as relevant here, "a determination by a court in an appropriate forum as to 'the arbitrability of the relevant claims and the outcome of any such arbitration.'" *Id.* at 4–5. Although the Oklahoma Defendants stated that they planned to file a petition to compel arbitration in the appropriate forum, they repeatedly asked for and received extensions of time to file that petition. *See* Dkt. Nos. 1 ¶¶ 22, 23; 6-1 ¶¶ 8, 10, 12.

On January 28, 2026, Respondent filed a second *pro se* complaint against the Oklahoma Defendants in the United States District Court for the Northern District of Oklahoma (Case No. 26-cv-00048-CVE-JFJ) (January 2026 Action). The January 2026 Action asserted religious discrimination claims under Title VII and the Oklahoma Anti-Discrimination Act. *See* Dkt. No. 1-11. In a filing in the 2025 Action, Respondent stated the January 2026 Action was "filed solely as a limitation preserving, protective filing to prevent forfeiture of Plaintiff's Title VII claims . . .

while the [June 2025 Action] remains stayed and arbitrability issues remain unsolved." Dkt. No. 1-12 ¶ 2; *see also* Dkt. No. 6-1 ¶ 13 ("Because the [June 2025 Action] was stayed indefinitely based on [WindShape Inc. and WindShape SA]'s repeated representations of an imminent arbitrability path, I filed a limitations-preserving protective Title VII action . . . so that my Right-to-Sue deadlines would not be forfeited while the primary case remained stayed."). Respondent also filed a "Motion to Lift Stay and Resume Limitation" alleging that the Oklahoma Defendants did not timely commence arbitration proceedings and that delay caused prejudice. *See* Dkt. No. 6-1 at 33–38.

## III. LEGAL STANDARD

Under the FAA, 9 U.S.C. §§ 1-16, a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. The FAA therefore "reflects a legislative recognition of 'the desirability of arbitration as an alternative to the complications of litigation.'" *Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (quoting *Genesco, Inc. v. T. Kakiuchi & Co*., 815 F.2d 840, 844 (2d Cir. 1987), *abrogated on other grounds as recognized by Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122 (2d Cir. 2017)). The FAA "[b]y its terms . . . leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Id.* (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

"[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Techs.,*

*Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). In addition, district courts are required to "compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even when the result would be the possibly inefficient maintenance of different proceedings in separate forums." *Dean Witter Reynolds, Inc.*, 470 U.S. at 217.

## IV. DISCUSSION

### A. Motion for Leave to File a Limited Source Identification Notice

As an initial matter, Respondent filed a motion seeking the Court to grant leave to "accept the proposed Limited Source-Identification Notice . . . solely for source identification . . . ." Dkt. No. 25 at 1. This motion appears to compare words in Petitioner's submissions with direct source material. *Id.* at 3. As a matter of procedure, the Court always reviews and incorporates direct source material rather than the parties' transposition of any text. Although the Court appreciates Petitioner's clarification of source material versus legal submissions, Respondent's motion is denied as unnecessary.

### B. Motion to Quash

Respondent filed a motion to quash or dismiss service in this case. *See* Dkt. No. 12. He argues that service of process was improper because his middle name is spelled incorrectly and the proof of service filed with the Court lists an incorrect address. *Id.* at 5. Respondent also argues that the Court does not have jurisdiction, and that he should have additional time to respond to the petition. *Id.* at 5–6. Petitioner responds that the case caption has been amended to reflect the correct spelling of Respondent's middle name, harmless technical defects with service of process and proof of service do not require dismissal of the case or the re-serving of the summons and pleadings, the Northern District of New York is the proper venue for this matter, and Respondent

should not be granted any additional time to file papers. *See generally* Dkt. No. 17.[3]

With respect to Respondent's arguments regarding service, on May 12, 2026, United States District Judge Glenn T. Suddaby issued a Text Order directing the Clerk of the Court to amend the docket "so that Respondent's name is spelled 'Jay Allan Shears,' not 'Jay Allen Shears.'" Dkt. No. 20. Judge Suddaby further ordered that, to the "extent that Respondent requests a correct summons and re-service of the Petition, that request is unsupported by a showing of cause," and rendered this finding for "the reasons stated by Petitioner" in its responses to Respondent's first and second motions to quash. *Id.* Respondent concedes that it is "the Court's responsibility to decide whether Petitioner has established valid service of the papers on which it asks the Court to rely," Dkt. No. 19 at 2, and argues that the Court "should not treat the service and timing issues raised in Dkt. 12 as harmless housekeeping matters." *Id.* at 3. The Court agrees that this determination lies within the judgment of the Court, and sees no reason to disturb Judge Suddaby's reasoned decision; therefore, there is no basis or necessity for service to be quashed or redone in this case.

Respondent also argues that the Court does not have jurisdiction to hear this case. Dkt. No. 12 at 5–6. In the 2025 Order, Judge Eagan found that the parties had not waived the arbitration forum selection clause of Syracuse, New York under the Agreement. Dkt. No. 1-8 at 4. "Indeed, '[p]arties can consent to personal jurisdiction through forum-selection clauses in contractual agreements.'" *Everything Yogurt Brands, LLC v. Biano*, 2026 WL 2654127, at *1 (2d Cir. Sept. 9, 2026) (summary order) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir.

[3] Respondent also argues that he has never consented in writing to electronic service, and that his "awareness of filings through PACER or docket monitoring is not the same thing as formal service." Dkt No. 19 at 2. Petitioner has submitted proof of service for all documents that it filed on the docket in this case, and the Clerk of the Court serves a copy of all documents issued by the Court. Therefore, Respondent need not consent to electronic service if he does not wish to do so.

2006)). Respondent therefore consented to personal jurisdiction through the arbitration clause's forum selection provision, and the venue selection of Syracuse.

Finally, Respondent seeks additional time to respond to Petitioner's motion. *See* Dkt. No. 12 at 6. Federal Rule of Civil Procedure 6(b)(1)(A) states that courts may extend deadlines "for good cause" when "a request is made, before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A). Respondent argues that this request is necessary because "the procedural record has been shaped by evolving service and process problems generated by Petitioner itself," and that denying this request carries prejudice for Respondent because "this Court is now the only active forum." Dkt. No. 19 at 2. As the Court explained, there are no outstanding service and process problems. Furthermore, the Federal Rules of Civil Procedure require that Respondent demonstrate good cause to receive an extension before the original deadline or after any extension expired. Here, Respondent has already responded to Petitioner's motion on multiple occasions: he filed his original opposition to the petition to compel arbitration (including a declaration, memorandum of law, and cross-motion) on February 25, 2026, Dkt. Nos. 1, 5, 6, 6-1, and 11 at 2–3, as well as reply papers, Dkt. Nos. 12-1, 12-2, 12-3, 13, 13-1, and 13-2. In addition, the Federal Rule of Civil Procedure that Respondent relies on does not permit the relief that he seeks; it only allows the Court to extend time "before the original time or its extension expires," or "after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). Respondent's request was not made before his original time to respond expired, before any extension expired, or after the time to respond expired if he failed to act (because, as outlined above, he filed extensive briefing). Therefore, Respondent's request is denied.[4]

[4] The Court notes that these arguments are also asserted by Respondent in his opposition to Petitioner's petition to compel arbitration and in support of his cross-motion. *See* Dkt. No. 5 at 4–5.

### C. Petition to Compel Arbitration

In deciding whether to compel arbitration, courts "ordinarily answer four questions." *Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 221 (2d Cir. 2019). First, "whether the parties agreed to arbitrate," second "the 'scope' of the arbitration agreement," third, "whether the plaintiff's federal statutory claims are 'nonarbitrable,'" and fourth "if some, but not all of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." *Id.* at 221–22 (internal quotation and citation omitted).

#### 1. Existence of the Agreement to Arbitrate

Petitioner argues that it "clearly satisf[ies] its initial burden of showing that an arbitration Employment Agreement exists between it and Respondent." Dkt. No. 1-3 at 13. Respondent responds that the arbitration clause is "procedurally and substantively unconscionable," and therefore, the Agreement "cannot be enforced or 'cured.'" *See* Dkt. No. 5 at 5.

"Whether the parties have agreed to arbitrate is generally a question of state contract law." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702 (2d Cir. 2023). The "'party seeking . . . arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made.'" *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (summary order)). "But this burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." *Id.* (cleaned up); *see, e.g.*, *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, 992 F. Supp. 378, 381 (S.D.N.Y. 1998) (holding that the *prima facie* requirement was satisfied by production of signed writing).

After the party seeking to compel arbitration makes a *prima facie* initial showing that an agreement to arbitrate existed, "the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" *Hines*, 380 F. App'x at 24 (citation omitted). The non-moving party has the burden of countering "with at least '*some evidence* . . . to substantiate [its] denial' that an

agreement had been made." *Barrows*, 36 F.4th at 50 (quoting *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972)).

Here, Petitioner attached to the petition the Agreement signed by Respondent and Petitioner's director on behalf of Petitioner, containing the arbitration clause in section 33. Dkt. No. 1-4 at 9-10. Petitioner has therefore established the existence of an agreement to arbitrate that binds Respondent, and the burden shifts to Respondent "to put the making of that agreement in issue." *Hines*, 380 F. App'x at 24 (internal quotation and citation omitted).

Respondent opposes the enforcement of the arbitration clause because he alleges it is procedurally and substantively unconscionable. *See* Dkt. No. 5 at 5–6; Dkt. No. 6-1 at 4. "An agreement to arbitrate that was unconscionable or was the product of economic duress is invalid." *Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 350 (S.D.N.Y. 2019) (citing *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002)). Under New York law, a contract is unconscionable when it is "'so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.'" *Id.* (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) (internal quotation omitted)). Unconscionability includes two components: procedural and substantive unconscionability. *See id.* The procedural component "asks whether a party lacked 'a meaningful choice' in deciding whether to sign the contract.'" *Id.* (quoting *State v. Wolowitz*, 96 A.D.2d 47, 68 (2d Dept. 1983)). "'Mere inequality in bargaining power' is not a sufficient basis for finding an arbitration clause unenforceable in the employment context." *Id.* (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)). As stated by Second Circuit, the FAA "certainly does not preclude the enforcement of employment contracts which make employment conditional upon an employee's acceptance of mandatory arbitration." *Ragone v. Atl. Video at the*

*Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (citing *Gilmer*, 500 U.S. at 33). "But unequal bargaining power 'coupled with high pressure tactics that coerce an employee's acceptance of onerous terms' may be sufficient to demonstrate procedural unconscionability." *Molina*, 363 F. Supp. 3d at 349 (quoting *Brennan*, 198 F. Supp. 2d at 382). "Substantive unconscionability exists when the terms are 'grossly unreasonable' by favoring the party seeking to enforce the contract." *Id.* (quoting *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013)).

Respondent argues that the arbitration clause is procedurally unconscionable because "it was imposed in an employment agreement on a take-it-or-leave-it basis with no meaningful ability to negotiate" and that "[t]he parties' relative bargaining power was grossly unequal." Dkt. No. 5 at 5. The Second Circuit rejected this argument in *Ragone. See* 595 F.3d at 121. There, the plaintiff argued that they were "offered the arbitration agreement 'on a "take it or leave it" basis' render[ing] it unenforceable." *Id.* at 122. The Second Circuit explained that "it is plain that 'this is not sufficient under New York law to render [the arbitration] provision procedurally unconscionable." *Id.* (quoting *Nayal v. HIP Net. Servs. IPA, Inc.*, 620 F. Supp. 566, 571 (S.D.N.Y. 2009)). Furthermore, as stated previously, inequality in bargaining power "is not a sufficient basis for finding an arbitration clause unenforceable in the employment context." *Molina*, 363 F. Supp. 3d at 349 (citing *Gilmer*, 500 U.S. at 33). Respondent provides no other evidence of procedural unconscionability for the Court to consider. For these reasons, the arbitration clause is not procedurally unconscionable.

Respondent also argues that the arbitration clause is substantively unconscionable because there is: (1) unilateral arbitrator selection; (2) mandatory fee splitting; (3) "one-sided carve-outs and remedy limits"; and (4) "confidentiality requirements and procedural asymmetries." Dkt. No. 5 at 5–6. Regarding unilateral arbitrator selection and mandatory fee splitting, Petitioner has

expressly waived its enforcement of these provisions, and therefore, they will be severed from the arbitration agreement. *See* Dkt. No. 11 at 14 ("Petitioner is willing to waive this right if the Court should determine otherwise. . . . This expressed waiver will render Respondent's challenge moot and is not a basis to invalidate the arbitration clause."); *id.* at 15–16 ("Rather than forcing the Court to undergo an extensive analysis to determine enforceability, Petitioner waives and will not seek to enforce this cost-sharing provision of the arbitration clause. . . . Petitioner's expressed waiver again renders Respondent's challenge moot.").[5] Petitioner argues that the other challenged terms are conscionable, but if the Court determines any term is legally prohibited, they can be severed under the terms of the Agreement.

A determination of substantive unconscionability "entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Gillman*, 73 N.Y.2d at 12 (citations omitted). "While determinations of unconscionability are ordinarily based on [the court's] conclusion that both the procedural and substantive components are present, there have been exceptional cases where a provision of the contract is so outrageous as to warrant holding it unenforceable on the ground of substantive unconscionability alone." *Id.* (internal citation omitted).

Respondent argues that section 33 of the Agreement is substantively unconscionable because it only allows Petitioner to seek equitable relief for certain claims and "purports to limit categories of damages." Dkt. No. 5 at 6. Petitioner states that the provision is permissible because

[5] The waiver of the unilateral selection of arbitrators provision is consistent with the Second Circuit's decisions in *Flores v. N.Y. Football Giants, Inc.*, where it found "persuasive some of the reasoning of the Fourth and Sixth Circuits, respectively, which refused to enforce arbitration provisions because of the unilateral selection of arbitrators." 150 F.4th 172, 185 n.62 (2d Cir. 2025) (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999); *McMullen v. Meijer, Inc.*, 355 F.3d 485, 494 (6th Cir. 2004)).

it allows for Petitioner to pursue this relief only in the event that Respondent breaches his obligations under section 13 of the Agreement, entitled "Confidential Information and Invention Assignments." Dkt. No. 11 at 16–18.

The relevant provision reads: "Nothing in this subsection shall be construed as precluding the Company from bringing an action for injunctive relief or other equitable relief or relief under the Confidential Information and Invention Assignment Employment Agreement." Dkt. No. 1-4 at 9–10. This provision "does not reflect a broader lack of mutuality in [the Agreement]." *Molina*, 363 F. Supp. 3d at 352 (citing *Plazza v. Airbnb, Inc.*, 289 F. Supp. 3d 537, 559 (S.D.N.Y. 2018) ("Particularly given the otherwise mutual application of the claims subject to arbitration to both [Defendant] and its users, I do not find that the separate carve-out for these intellectual property claims to be substantively unconscionable.")). "[E]ven if this carveout did reflect broader unevenness in the [arbitration clause], 'mutuality of remedy is not required in arbitration contracts.'" *Surman v. MongoDB, Inc.*, No. 1:26-cv-166, 2026 WL 1983554, at *8 (S.D.N.Y. July 9, 2026) (quoting *Castillo v. Plaza Motors of Brooklyn, Inc.*, No. 20-cv-4337, 2021 WL 8820236, at *5 (E.D.N.Y. Sept. 14, 2021) (agreeing that arbitration agreement's "injunctive relief provision is one-sided," but holding nevertheless that it is "not unconscionable")). Therefore, the Court does not find that this portion of the arbitration clause is substantively unconscionable.

Respondent also argues that Section 33's purported limitation on damages is substantively unconscionable. Dkt. No. 5 at 6. Petitioner argues that this provision is consistent with New York law, federal law, and the FAA. Dkt. No. 11 at 18–21.

The relevant provision reads: "The arbitrator shall not have the right to award punitive damages, consequential damages, lost profits, or speculative damages to either party." Dkt. No. 1-4 at 10. The punitive damages provision is permissible under New York law, because it has

express and unambiguous language that excludes punitive damages. In *Mastrobuono v. Shearson Lehman Hutton, Inc.*, the Supreme Court established that the FAA presumes that punitive damages must be allowed unless the parties explicitly agreed to invoke the relevant forum's restrictions on arbitral authority (here, New York's). *See* 514 U.S. 52, 59–60 (1995). Here, the employment agreement explicitly excludes punitive damages, and is therefore permitted. *See, e.g.*, *Flintlock Const. Servs., LLC. v. Weiss*, 122 A.D.3d 51, 54–55 (1st Dept. 2014) ("The choice-of-law provision, in the absence of language expressly invoking the *Garrity* rule, or expressly excluding claims for punitive damages, is insufficient to remove the issue of punitive damages from the arbitrator. . . . The Supreme Court has made clear that in order to remove the issue of punitive damages from the arbitrators, the agreement must unequivocally exclude the claim.") (cleaned up). Moreover, neither consequential damages nor speculative damages are available as a right or remedy for Respondent under his Title VII and FLSA claims in Oklahoma. *See, e.g.*, 29 U.S.C. § 216(b) (consequential damages are not identified as a separate recoverable category under FLSA and wage claims are limited to "unpaid minimum wages" or "unpaid overtime compensation" plus liquidated damages (not including speculative future damages)); 42 U.S.C. § 1981a (consequential damages and speculative damages are not identified as a separate recoverable category under Title VII). Therefore, the Court does not find that this portion of the arbitration clause is substantively unconscionable.

Respondent also argues that the arbitration clause's "confidentiality requirements and procedural asymmetries (including the ability to proceed in a party's absence after notice)" are substantively unconscionable. Dkt. No. 5 at 6. Petitioner argues that courts in the Second Circuit generally find these provisions conscionable. Dkt. No. 11 at 15, 21.

The first relevant provision is: "the arbitration shall be in front of an arbitrator with the

following exceptions if in conflict: . . . (c) arbitration may proceed in the absence of any party if written notice of the proceedings has been given to such party." Dkt. No. 1-3 at 9. The Court agrees with Petitioner; arbitrators possess the authority to conduct proceedings when a party is absent when proper notice is provided to the parties involved. *See, e.g.*, *New York Hotel and Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 781 n.4 (S.D.N.Y. 1997) ("A properly designated arbitrator may proceed in the absence of a party who refuses to participate."); *Smith v. Positive Prods.*, 419 F. Supp. 2d 437, 445–46 (S.D.N.Y. 2005) (federal arbitration rules specifically authorize proceedings where a party is absent after due notice). The second relevant provision is: "The parties shall keep confidential the existence of the claim, controversy, or disputes from third parties (other than the arbitrator), and the determination thereof, unless otherwise required by law or necessary for the business of the Company." Dkt. No. 1-4 at 10. When a confidentiality clause applies equally to both parties, it generally does not render an agreement substantively unconscionable. *See Billi v. Coverall North Am., Inc.*, 444 F. Supp. 3d 332, 355 (D. Conn. 2020) (internal citation omitted); *see also Guyden v. Aetna, Inc.*, 544 F.3d 376, 385 (2d Cir. 2008) ("confidentiality clauses are so common in the arbitration context that [plaintiff's] attack on the confidentiality provision is, in part, an attack on the character of arbitration itself.") (internal quotation and citation omitted). Therefore, the Court does not find that these portions of the clause are substantively unconscionable.

Accordingly, after severing the unilateral arbitration selection and the fee splitting provisions, the Court concludes that the remainder of the Agreement is not unconscionable. In addition, severance of those provisions does not void the entire agreement because section 29 of the Agreement specifically states that:

> Any provision of this Agreement which is or becomes prohibited or unenforceable in any jurisdiction shall not invalidate or impair the

> remaining provisions of this Agreement which shall be deemed severable from the prohibited or unenforceable provisions and any prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable that provision in any other jurisdiction.

Dkt. No. 1-4 at 9.

Accordingly, the selection of arbitrator provision and mandatory fee splitting provisions are severed from the Agreement, and the remainder of the Agreement is not unconscionable and therefore enforceable. The Court therefore finds that the parties have agreed to arbitrate in satisfaction of the first prong of the analysis.

**2. Scope of the Agreement to Arbitrate and Arbitrability of Federal Statutory Claims**

Petitioner argues that the Agreement delegates questions of arbitrability to the arbitrator but that, in any event, all of Respondent's claims against it fall within the scope of the Agreement because the claims are employment related. Dkt. No. 1-3 at 15–18. Respondent responds that questions of arbitrability cannot be delegated for the same reasons he challenged the enforceability of the arbitration clause. Dkt. No. 5 at 6.

"[A]ny doubts" about the scope of arbitration agreements are "normally resolve[d] . . . 'in favor of arbitration.'" *Abdullayeva*, 928 F.3d at 222 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). "This presumption in favor of arbitrability comes" directly from the FAA. *Id.* As such, arbitration agreements are to be "construe[d] . . . as broadly as possible," and "language excluding certain disputes from arbitration must be clear and unambiguous . . . arbitration should be ordered unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Genesco, Inc.*, 815 F.2d at 847 (internal quotation and citation omitted). "In determining whether a particular claim falls within the scope" of an agreement to arbitrate, courts "focus on the factual

allegations in the complaint rather than the legal causes of action asserted." *Id.* at 846. "If the allegations underlying the claims touch matters covered by" the arbitration agreement "then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (internal quotation and citation omitted).

"'When parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.'" *Kurmangaliyev v. Verizon Wireless Servs.,* LLC, 832 F. Supp. 3d 190, 211 (E.D.N.Y. 2026) (quoting *Davitashvili v. Grubhub Inc.*, 131 F.4th 109, 117 (2d Cir. 2025)) (internal quotation omitted). "Clear and unmistakable evidence exists when an arbitration clause explicitly delegates arbitrability determinations to the arbitrator, or when it incorporates by reference arbitration rules that do so." *Id.* (internal citation and quotation omitted); *see also Diaz v. Wanrong Trading Corp.*, 810 F. Supp. 3d 379, 388 (E.D.N.Y. 2025) ("[I]f the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue. If it does not, then the court considers whether 'the parties' dispute fall[s] within the scope of the arbitration agreement.'" (citations omitted)).

Here, the Agreement contains a provision that explicitly delegates such determinations to the arbitrator: "*Any controversy, claim or dispute arising out of or relating to this Agreement* or the employment relationship, either during the existence of the employment relationship or afterwards, between the parties hereto, their assignees, their affiliates, their attorneys, or agents, shall be settled by arbitration in Syracuse, New York. . . . All such controversies, claims or disputes shall be settled in this manner in lieu of any action at law or equity . . . ." Dkt. No. 1-4 at 9–10 (emphasis added). The provision also includes that "such arbitration shall be conducted in accordance with the then prevailing commercial arbitration rules of the American Arbitration

Association." *Id.* at 9.

The Second Circuit has found that a "'clear and unmistakable' provision [exists] where a broad arbitration clause expressly commits all disputes to arbitration, concluding that *all* disputes necessarily includes disputes as to arbitrability." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 321 (2d Cir. 2021). Therefore, "[t]he Court finds that the questions of arbitrability raised by the parties are properly for the arbitrator and not this Court, just as the parties agreed." *Alvarez v. Experian Info. Solutions, Inc.*, 661 F. Supp. 3d 18, 28 (E.D.N.Y. 2023). While Respondent argues that his dispute is not encompassed by the Agreement, or that the Agreement does not follow the proper rules as set forth by the American Arbitration Association*,* see Dkt. No. 5 at 6–7, "the Court's inquiry can go no further." *See id.* (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 66 (2019) (noting that where the question of arbitrability has been validly delegated to the arbitrator a "court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.")).

Finally, the Court must determine whether any of Respondent's federal statutory claims are non-arbitrable as a matter of law. *Abdullayeva*, 928 F.3d at 221–22. Statutory claims are arbitrable unless Congress "'has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *Rodriguez-Depena v. Parts Auth., Inc.*, 877 F.3d 122, 123 (2d Cir. 2017) (quoting *Gilmer*, 500 U.S. at 26). Respondent's FLSA claims are recognized as issues subject to arbitration. *See id.* ("We conclude that FLSA claims are arbitrable"); *see also Martinez v. GAB. K, LLC*, 741 F. Supp. 3d 26, 36-37 (S.D.N.Y. 2024) ("[T]he Second Circuit and courts in the [Southern District of New York] repeatedly have found FLSA claims to be arbitrable.") (collecting cases)). Furthermore, Respondent's claims under Title VII are arbitrable. *See Daly*,

939 F.3d at 422 (concluding that "claims arising under Title VII . . . are arbitrable"); *see id.* ("We have previously decided that there is insufficient evidence 'that with respect to claims under Title VII, Congress intended to preclude the waiver of judicial remedies.'") (quoting *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999); *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 148 (2d Cir. 2004)). Therefore, the Court finds that none of Respondent's claims are non-arbitrable as a matter of law.

### 3. Waiver or Forfeiture of Arbitration

Respondent argues that Petitioner's active litigation in the June 2025 action and "months-long delay" "support waiver/forfeiture of any right to compel arbitration." Dkt. No. 5 at 7. Petitioner responds that it has not waived its rights to arbitrate and, in fact, has "made it clear from the beginning to both the court and Respondent that it intended to exercise its right to compel arbitration." Dkt. No. 11 at 24–27.

Waiver is the "intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022). In *Morgan*, the Supreme Court held that whether a party has waived its right to arbitrate is determined by the same rules applicable "[o]utside the arbitration context." *Id.* *Morgan* held that a waiver of the right to arbitrate cannot be conditioned on a showing of prejudice, abrogating a line of cases which considered prejudice to the party resisting arbitration. *See id.* at 419; *see Doyle v. UBS Fin. Servs., Inc.*, 144 F.4th 122, 127 (2d Cir. 2025). Rather, the Court's focus "must be 'on the actions of the person who held the right' and not 'the effects of those actions on the opposing party.'" *Doyle*, 144 F.4th at 127 (quoting *Morgan*, 596 U.S. at 417). Following *Morgan*, the Second Circuit has instructed that "courts may evaluate waiver by focusing on the following question: Did the moving party knowingly relinquish the right to arbitrate by acting inconsistently with that right?" *Id.* at 130. In answering this question, courts may "consider all aspects of the moving party's conduct—*including* those factors that were

significant under [the Second Circuit's] pre-*Morgan* test—so long as [they] do not do so through the lens of prejudice." *Id.*[6]

Here, the Court concludes that Petitioner has not acted inconsistently with the right to arbitrate. The docket of the June 2025 action indicates that Petitioner filed a motion one month after Respondent commenced the lawsuit seeking to transfer or, alternatively, compel arbitration. *See* Dkt. No. 1-7 at 3. Petitioner thus raised its intention to arbitrate at its earliest appearance. In addition, Judge Eagan stayed the June 2025 action, and the parties have not conducted "a substantial amount of merits-based litigation such as dispositive or merits-based motion practice nor was, or is, trial imminent." *Alvarez*, 661 F. Supp. 3d at 32 (citing *Nicosia*, 815 F. App'x at 614 (finding no waiver after 32-month delay because there was no substantial merits-based litigation)); *Pierre v. Rochdale Vill. Inc.*, No. 18-cv-6383, 2020 WL 6799635, at *7 (E.D.N.Y. Nov. 19, 2020) ("[N]either party has briefed the sufficiency of Plaintiff's allegations or the merits of his underlying Title VII claim or filed any other substantive motions.").

Further, Respondent has not demonstrated that the approximately six-month delay between Judge Eagan's order staying the June 2025 Action and Petitioner's commencement of this proceeding shows that Petitioner knowingly relinquished its right to arbitrate by acting inconsistently with that right. Petitioner's submissions indicate that the delay was caused by Petitioner's efforts to retain New York counsel and reiterate Petitioner's intent to seek to compel arbitration. *See* Dkt. Nos. 1-9, 1-10. In any event, "delay alone is not enough to waive the right to arbitrate." *Waheed v. SMS 1 MMS, LLC*, No. 24-cv-6476, 2026 WL 2273450, at *11 (S.D.N.Y.

[6] Before *Morgan*, the Second Circuit considered three factors: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." *Doyle*, 144 F.4th at 126 (citation omitted).

June 18, 2026) ("Decisions in this Circuit since *Doyle* have explained that delay alone is not enough to waive the right to arbitrate.").

For all of these reasons, Petitioner did not waive its right to arbitration. *See Alvarez*, 661 F. Supp. 3d at 32 (Petitioner's "affirmative conduct to date did not 'knowingly relinquish the right to arbitrate by acting inconsistently with that right . . . .'") (quoting *Morgan*, 596 U.S. at 412).

**4. WindShape SA**

Respondent argues that omitting WindShape SA from this current action supports dismissal of the action or requires joinder, and that any action in this case must "expressly preserve Respondent's positions in the Oklahoma actions . . . ."[7] Dkt. No. 5 at 7–8; Dkt. No. 6-1 at 4. Petitioner responds that its parent corporation, WindShape SA, is not a proper party to this proceeding and should not be forced to be bound to the jurisdiction of the Court. Dkt. No. 11 at 28–29. After carefully considering Respondent's argument, the Court finds it unpersuasive.

Federal Rule of Civil Procedure 19(a) explains when joinder of a party is required. First, the party must be "subject to service of process" and its joinder cannot "deprive the court of subject-matter jurisdiction." Second, one of the following provisions must be established:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or

[7] To the extent that Respondent seeks to have his claims and "positions" in the June 2025 and January 2026 Actions "preserved," Dkt. No. 5 at 8, the Court notes that Judge Egan stayed the June 2025 Action and has sole discretion over the pending litigation in Oklahoma. *See* Dkt. No. 1-8 at 5.

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Individuals "who are not parties to the arbitration agreement cannot be 'indispensable' parties under Rule 19(b) if they do not meet either of the threshold tests of Rule 19(a)." *Dr.'s Assocs., Inc. v. Distajo*, 66 F.3d 438, 466 (2d Cir. 1995). As a result, "the court must find either that 'in that person's absence, the court cannot accord complete relief among existing parties' or the absence of that person may 'impair or impede the person's ability to protect the interest' or 'leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations.'" *Doctor's Assocs., Inc. v. El Turk*, No. 17-cv-2019, 2018 WL 3238701, at * 7 (D. Conn. Feb. 28, 2018) (quoting Fed. R. Civ. P. 19(a)).

In *Distajo*, "the Second Circuit found the first threshold requirement was not satisfied where, as here, the relief requested [w]as 'an order compelling arbitration,' which could be ordered 'regardless of whether DAI's development agents (nonparties to the arbitration agreement) [were] present.'" *Id.* (quoting *Distajo*, 66 F.3d at 446). Regarding "the second threshold requirement, the Second Circuit found that risk was 'overcome in this context by the FAA's strong bias in favor of arbitration.'" *Id.* (quoting *Distajo*, 66 F.3d at 446) ("Indeed, the Supreme Court has categorically stated that the FAA requires courts to enforce an arbitration agreement notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.") (additional quotation and citation omitted).

The same analysis applies here where WindShape SA is not a signatory to the Agreement. *See* Dkt. No. 1-4 at 10. First, this Court can grant the complete relief sought by Petitioner in this case – the order compelling arbitration – regardless of whether WindShape SA is a party. Second, the concern for possible prejudice resulting from piecemeal litigation is "overcome in this context

by the FAA's strong bias in favor of arbitration." *Distajo*, 66 F.3d at 466; *see also El Turk*, 2018 WL 3238701, at *7 (concluding "that the Second Circuit's reasoning in *Distajo* is not only persuasive but controlling").

Therefore, Respondent's motion to join WindShape SA to this case is denied.

## V. CONCLUSION

For these reasons, it is

**ORDERED** that Petitioner's petition to compel arbitration, Dkt. No. 1, is **GRANTED** with the following modifications based on Petitioner's waivers: (1) the removal of the fee-splitting provision, and (2) the removal of the unilateral arbitrator selection provision; and it is further

**ORDERED** that Respondent's cross-motion to dismiss the action, Dkt. No. 6, is **DENIED**; and it is further

**ORDERED** that Respondent's motion for leave to file a limited source identification notice, Dkt. No. 25, is **DENIED**; and it is further

**ORDERED** that Respondent's motion to quash or dismiss defective process and service, to recognize Respondent's correct legal name, and in the alternative to extend time, Dkt. No. 12, is **DENIED**; and it is further

**ORDERED** that Respondent's motion for leave to file a limited declaration and three exhibits, Dkt. No. 13, is **DENIED**; and it is further

**ORDERED** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 29, 2026

Elizabeth C. Coombe
U.S. District Judge